IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**DERICO GOLDEN,**

    **Plaintiff,**

vs.                                                                           CASE NO._____

                                                 **JURY DEMANDED**

**MIRABILE INVESTMENT CORPORATION,**
**d/b/a BURGER KING,**
**a Domestic Corporation,**

    **Defendant.**

---

### COMPLAINT
---

Comes now Plaintiff, Derico Golden, by and through his counsel of record, Kathleen L. Caldwell, and sues Defendant Mirabile Investment Corporation, a Domestic Corporation, d/b/a "Burger King," seeking injunctive relief, back-pay, compensatory and punitive damages and other remedies.

### I. NATURE OF CASE

1.  This action arises under 42 U.S.C. § 2000e (as amended by 42 U.S.C. § 1981A) for discrimination on the basis of race (black) and sex (male) in terms and conditions of employment (Title VII of the Civil Rights Act of 1964); and on the basis of age, pursuant to the Age Discrimination in Employment Act of 1974 (ADEA), 29 U.S.C. § 626 et seq.

2. This is an action brought by Plaintiff against Mirabile Investment Corporation, d/b/a Burger King, his employer. Plaintiff seeks declaratory and injunctive relief and monetary damages to redress deprivation of rights accorded to Plaintiff under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and the Age Discrimination of Employment Act of 1974, 29 U.S.C. § 626 et seq. Plaintiff is an African-American male employee over the age of 40 who was a victim of discriminatory employment policies and practices. Plaintiff is a qualified employee who has been denied opportunities for promotions, denied equal treatment with regard to bonuses, raises, and discipline, held to different production standards and been given different job assignments due to Defendant's racially and sexually and age-conscious discriminatory practices.

3. Plaintiff has been treated differently because of his race, sex, and age in discipline, pay, job assignments, leave, promotional opportunities and exposed to a hostile work environment. He has been terminated on account of his race, sex, and age.

## II. JURISDICTION

4. The jurisdiction of this Court is invoked by Plaintiff pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), which statutes confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of

civil rights, including Title VII and the Age Discrimination in Employment Act.

5. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b), inasmuch as the Defendant can be found in the Western District of Tennessee, and a substantial part of the events giving rise to the claim occurred in the Western District of Tennessee.

### III.  PARTIES

6. Plaintiff is an African American male citizen of the United States of America, over the age of 40, who at all times material and relevant was employed by Defendant Mirabile Investment Corporation, a/k/a "MIC" or "MIC Terrafirma," d/b/a "Burger King."

7. Defendant, Burger King Corporation, hereinafter referred to as "Burger King", is a corporation with offices located and doing business in Shelby County, Tennessee.  At all relevant times Burger King is an employer within the meaning of 42 U.S.C. § 2000e.  It is likewise responsible for hiring employees and managers/supervisors and contracting for hire, for supervising said employees and managers/supervisors, and for all necessary proper and legal personnel decisions regarding employees and management, including ensuring compliance with federal and state equal opportunity laws, equal opportunity policies, and disciplinary procedures for violations therefrom, and including proper and legal promotional practices and training.

## IV. ADMINISTRATIVE EXHAUSTION

8.   Plaintiff Derico Golden filed his original Charge of Discrimination with the Equal Employment Opportunity Commission on May 14, 2013, Charge (No. 490-2013-01620).  On March 31, 2014 he received a Notice of Right to Sue.  Copies of the Charge and Notice of Right to Sue are attached hereto as Exhibit "A".  This action is timely filed.

## V. FACTS

9.   Plaintiff adopts and re-alleges all of the allegations contained in the foregoing paragraphs 1 through 8 as if set forth fully herein.

10.   Plaintiff was hired by Defendant as a general manager on or about August 28, 2010.  He as general manager was expected to manage one of Defendant's "stores," meaning a restaurant serving Burger King products.

11.   By November, 2010, Plaintiff was serving as general manager of the Burger King No. 11352, located at 4628 Summer Avenue, Memphis, Shelby County, TN.

12.   Plaintiff's job performance had always been satisfactory or above.  For example, in a "spot visit" his store scored a C+ on September 12, 2012. In the summer of 2012, Plaintiff was evaluated; based on sales and "guest tracing," Plaintiff was awarded a 2% raise.  His score was an 88 or 89.  While he should have received a bigger raise, this raise evidences a satisfactory job performance of Plaintiff.  He had no write-ups during his years with Burger

King. Defendant has produced a write-up to the EEOC. Plaintiff has never seen that document until the EEOC released it to him. It contains a signature purporting to be Plaintiff's. It is not his signature. Plaintiff took great care to follow Burger King's management practices and policies, including the cleanliness and sanitation of his restaurant, the hiring of personnel and supervision of personnel.

13. Plaintiff's restaurant did well under Plaintiff's leadership. It made an extra $100,000.00 for the 2012 year. For 2011, the restaurant had exceeded expectations by over $60,000.00. At one time, the store was ranked 18 out of the top 20, out of a total of 57 or 58 stores.

14. By 2012 problems had arisen in the restaurant. Plaintiff's immediate supervisor, Kellie Barksdale (white female) began demanding that Plaintiff let go certain employees, including a black male employee who had been employed for over two years. Plaintiff asked her why said employee should be let go. Her response: "slow." That employee, although regarded as disabled by Plaintiff, had been very reliable, on time, and good about following orders. Kellie instructed Plaintiff to slice the employee's time in half or force him to quit. She said she did not want to pay for the "ObamaCare." She said that decision came from the president and the vice-president. Another employee had been employed for about eight years. Kelley demanded that Plaintiff fire her for being illiterate.

15. Plaintiff tried to talk to Barksdale about what she was doing, the decisions she was making. Barksdale told Plaintiff to steal money out of the cash drawer and say that the cashier working that drawer stole it, that way he could fire her. Plaintiff refused to do what she wanted him to do. Her response was: "To be on my team, you have to get dirty. Have to have no conscience. [Then] wake up the next day like nothing happened." Plaintiff became increasingly upset and guarded. Barksdale earlier had admitted to Plaintiff that she had never before supervised a black male.

16. Plaintiff had a second assistant store manager, "Marquez," a black male, age about 22 years, who had been promoted by Barksdale from a position of cook. Marquez was a low performer. Plaintiff had already fired Marquez's best friend for failing to show up for work after two prior no-shows. Plaintiff came to believe Marquez's poor work performance was intentional. Plaintiff brought Marquez to Barksdale's attention. Her response was that Marquez was Plaintiff's fault, that Plaintiff should have trained him better. She then went on to say that she had basically raised Marquez; that he was like a son to her; that she herself had promoted him to management. Barksdale had no respect for Marquez. She used him. She could control him.

17. On or about February 24, 2013, a window cashier put cash in her pocket. This theft occurred on Marquez's shift. Barksdale's response: just make her pay the money back. Plaintiff did not think that this was the correct

response. Plaintiff wanted to take more appropriate action. Barksdale tried to hold Plaintiff responsible for the theft, which occurred on Marquez's shift. Barksdale's response: "That's all 'your people' do [steal]." Plaintiff reasonably concluded this was a racial remark.

18. Plaintiff learned that there was a perception that Burger King Store No. 11352 needed to be "fixed." If Barksdale did not get the store fixed, she would be out of a job. Plaintiff then became the fall guy. And Barksdale's response was to keep putting more pressure, more duties on Plaintiff. He found himself working over two shifts a day, with no backup support. She demanded that Plaintiff spend his own money to paint the store and do other repairs. She insisted that Plaintiff climb out the roof each morning to adjust the HVAC unit. She did not ask her other managers to do such things.

19. Barksdale, a white female, did not like black people in general. She said to Plaintiff on one occasion, "'Your people' always steal." Plaintiff reasonably understood she was referring to Plaintiff's race, black. When Barack Obama won in the presidential election Barksdale came to the store the next day or so, and said, "The country's about to go down the drain. The wrong person won the election." Plaintiff reasonably understood her comment pertained to Obama's race.

20. The president of the company, Bob Cook, said in Plaintiff's presence, when the air conditioning unit in the kitchen area had been out for

the whole summer of 2011: "It's hot back there. But 'those people,' they're used to it. They can handle it." Plaintiff reasonably understood that he was referring to race, because the only persons in the kitchen on that occasion were three black male cooks, and the Plaintiff. It was clear to Plaintiff that the company was permeated with prejudice.

21. Barksdale had kept up the barrage of incidents directed towards Plaintiff on account of his race, sex, and age. The incidents were occurring daily, and affected and interfered with Plaintiff's abilities to perform his job. The hostile environment was increasing. It was pervasive. Plaintiff requested help, and Barksdale denied him any help. She insisted that he keep two managers known to have drug habits despite Plaintiff's complaints and legitimate concerns.

22. Barksdale further blatantly treated Plaintiff differently on account of his sex, male. She had a female manager in Marion, AR. That manager, due to problems in her store, had to work six days a week. She was paid extra money for the extra day. She continued to work the extra day for months and continued to get the extra pay. Plaintiff was denied equal treatment, even though he was working six days a week.

23. On February 26, 2013, Plaintiff was terminated, purportedly for poor performance. This allegation was untrue. The store evaluation for October 2012 for Plaintiff was a C+. The comparable evaluations for Paul Sipes

(white/male) and Pat Gills (white/male) were C+. Neither of them were terminated. Tiny Gandy scored a C- and Lisa Jones (both female) scored a C+; they were not discharged. Misty ____ (female) scored an F and she was not discharged, but only demoted. Christy ____ (female) had a D-, and she was only demoted.

24. Plaintiff was replaced by Marquez Johnson, who served for only one month. He could not handle it.

25. When Plaintiff was terminated by Barksdale, Barksdale told him: "I need someone with a conscience. I gave you an opportunity to prove yourself to me. [Did not work] so I will go the route of a younger manager." Plaintiff reasonably understood she was talking about Plaintiff's age. Barksdale also told Plaintiff that he could go out and get another job as manager, unlike Marquez, who had a young family to take care of. Plaintiff also had a family to support.

26. Plaintiff has sustained significant loss of wages and benefits as the direct and proximate result of his termination. He should be reinstated, and returned to the pay status he would have attained but for the discrimination.

27. Plaintiff has been embarrassed and humiliated by the many months of discrimination and hostile work environment. The termination has been a devastating blow to his self-esteem and his ability to get a comparable

9

job. He has sustained physical and emotional injuries as a proximate result of the discrimination.

## V. CAUSES OF ACTION
### COUNT I

28. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-27 as if set forth herein in full.

29. Based on the foregoing, Plaintiff states a claim against Defendant for discrimination on the basis of race and sex in terms and conditions of employment, Title VII, 42 U.S.C. § 2000e.

### COUNT II

30. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1-29 as if set forth herein in full.

31. Based on the foregoing, Plaintiff states a claim against Defendant for discrimination on the basis of age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626 et seq.

32. The actions of Defendant by and through its managers and agents, were intentional and willful. They acted with knowledge that they were violating the law, or with reckless indifference as to whether they were violating the law.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully request that this Court grant the following relief:

1. Judgment be entered declaring that the actions of Defendant, Mirabile Investment Corporation, by and through its servants, agents and employees, are in violation of Sections 703 and 704 of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, and in violation of 42 U.S.C. § 1981;

2. Judgment be entered declaring that the actions of Defendant, Mirabile Investment Corporation, by and through its servants, agents and employees, are in violation of the Age Discrimination in Employment Act of 1974, 29 U.S.C. § 626;

3. Injunctive relief as may be appropriate;

4. As to Title VII:  Judgment against Defendant, Mirabile Investment Corporation for all equitable relief, including back pay and benefits to which Plaintiff may be entitled, including promotions, career ladder advancement, and retirement, and for all legal relief, including compensatory and punitive damages and all other relief as may be available under said statute;

5. As to ADEA:  Judgment against Defendant for back pay (wages and benefits), and for liquidated damages, and any other relief that may be available to him under the law.

6. Plaintiff be awarded his costs, attorney fees and expenses incurred

in bringing this action, as well as prejudgment interest as provided by law;

      7.    Plaintiff be awarded such other relief as the court determines is just under the law or in equity or as may be appropriate to effectuate the purposes of the statutes relied upon; and

      8.    Jury trial is demanded.

      Respectfully submitted,

      KATHLEEN CALDWELL, PLLC

      *s/Kathleen L. Caldwell, 9916*
      2670 Union Avenue Ext., Suite 110
      Memphis, TN 38112
      Telephone: (901) 458-4035
      Facsimile: (901) 458-4037